## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTINE SLOWINSKI, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | No. 25-cv-6523 |
| v. | ) ) | Judge April M. Perry |
| BEIERSDORF, INC., | ) ) | |
| Defendant. | ) ) | |

## OPINION AND ORDER

Christine Slowinski ("Plaintiff") brings this putative class action lawsuit against Beiersdorf, Inc. ("Defendant") alleging claims for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.* (Count I), common law fraud (Count II), and unjust enrichment (Count III). Doc. 15. Before this Court is Defendant's second motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1] Doc. 19. For the reasons that follow, Defendant's motion to dismiss is granted.

## BACKGROUND

Defendant advertises, markets, sells, and distributes Eucerin skincare products. Doc. 15 ¶¶ 8, 10. At issue in this case are three Eucerin products: (1) Intensive Repair Lotion, (2) Advanced Repair Cream, and (3) Advanced Repair Lotion. *Id.* ¶ 10. The front label describes all three products as "Natural Moisturizing Factors Enriched," as depicted in the image below:

---

[1] The Court denies Defendant's first motion to dismiss, Doc. 11, as moot given that Plaintiff has since filed an amended complaint.



*Id.* ¶¶ 10, 27.

The complaint explains that "natural moisturizing factor" ("NMF") is a term that "refers to a group of chemicals found in the outer layers of human skin that have an important role in moisturizing skin." *Id.* ¶ 9. According to the complaint, examples of NMFs include lactic acid, sodium PCA, arginine HCL, glycine, sodium lactate, and urea. *Id.* ¶ 11. Defendant's products each contain a combination of these NMFs. Specifically, Intensive Repair Lotion contains lactic acid, sodium lactate, and urea, Advanced Repair Lotion contains lactic acid, sodium lactate, urea, sodium PCA, and arginine HCL, and Advanced Repair Cream contains lactic acid, sodium lactate, urea, sodium PCA, arginine HCL, and glycine. *Id.* ¶¶ 17, 19-23.

On July 7, 2024, Plaintiff purchased "an intensive repair lotion" from a Target store in Schaumburg, Illinois. *Id.* ¶ 16. At the time of her purchase, Plaintiff read the front label on

Defendant's product and interpreted "Natural Moisturizing Factors" to mean that the NMFs in the product would not be synthetic. *Id.* ¶¶ 12, 32. Plaintiff asserts that reasonable consumers interpret the term "natural" to mean "as found in nature and not involving anything made or done by people." *Id.* ¶ 13. This, Plaintiff claims, is a problem because Defendant uses synthetically manufactured forms of lactic acid, sodium PCA, arginine HCL, glycine, sodium lactate, and urea in its products rather than purely "natural" ones. *Id.* ¶¶ 14, 17-23.

Plaintiff alleges she was deceived into buying Defendant's product, which did not provide her with the benefit of her bargain due to its fraudulent labeling. *Id.* ¶¶ 28, 32. Defendant's deception purportedly led consumers to feel incentivized to purchase its products, generated an increased price of the products and quantity of sales, and shifted the consumer demand curve away from properly labeled competing products. *Id.* ¶¶ 34-35.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the Court's subject matter jurisdiction. When a defendant brings a 12(b)(1) motion, "the district court must accept as true all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor, unless standing is challenged as a factual matter." *Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688, 691 (7th Cir. 2015). It is the plaintiff's burden to establish standing. *Id.*

Under Federal Rule of Civil Procedure 12(b)(6), a case may be dismissed when a plaintiff fails to state a claim upon which relief can be granted. A 12(b)(6) motion is a challenge to the sufficiency of a complaint, not its merits. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). When considering such a motion, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *See*

*Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a motion to dismiss, a plaintiff need only include "a short and plain statement of a claim that is plausible on its face and entitles them to relief." *Roldan v. Stroud*, 52 F.4th 335, 339 (7th Cir. 2022). The short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The factual allegations in the complaint must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The law is clear that a "formulaic recitation of the elements of a cause of action will not do." *Id.*

Claims sounding in fraud are subject to the heightened pleading requirement of Federal Rule of Civil Procedure 9(b). Rule 9(b) requires a pleading to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). While the precise level of particularity required under Rule 9(b) depends upon the facts of the case, the rule "ordinarily requires describing the who, what, when, where and how of the fraud." *Camasta v. Jos. A. Bank Clothiers Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (internal citation omitted). "One of the purposes of the particularity and specificity required under Rule 9(b) is to force the plaintiff to do more than the usual investigation before filing his complaint." *Id.* (internal citation omitted).

## ANALYSIS

Defendant argues that this case should be dismissed because: (1) Plaintiff's ICFA claim fails to plausibly allege a deceptive practice and actual pecuniary loss; (2) Plaintiff's fraud claim lacks the requisite false statement and fails for the same reasons as the ICFA claim; (3) Plaintiff's unjust enrichment claim fails because it is not an independent cause of action; and (4)

4

Plaintiff lacks standing to pursue claims for products she did not purchase and to pursue injunctive relief because there is no likelihood she will be deceived again.[2] Doc. 20.

## I.  Article III Standing

The Court begins with standing, which "is a threshold question in every federal case because if the litigants do not have standing to raise their claims the court is without authority to consider the merits of the action." *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724, 726 (7th Cir. 2016). Article III of the Constitution limits the jurisdiction of the federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2. The requirement of standing derives from this provision and has three elements: plaintiff must have (1) a concrete and particularized injury in fact (2) that is traceable to the defendant's conduct and (3) that can be redressed by judicial relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Only injuries that are sufficiently concrete, particularized, and actual or imminent qualify as injuries in fact. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423-24 (2021). Standing is jurisdictional, and without standing the case must be dismissed. *See United States v. Hays*, 515 U.S. 737, 742 (1995).

### A.  Unpurchased Products

Although Plaintiff's claims involve Intensive Repair Lotion, Advanced Repair Cream, and Advanced Repair Lotion, the complaint alleges only that Plaintiff purchased "an intensive

---

[2] Defendant also argues that the ICFA claim does not apply extraterritorially and any such claim should be dismissed with respect to the proposed nationwide class. But such an argument is not appropriately resolved at this stage of proceedings. *See Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011) ("If the Illinois Consumer Fraud Act law does not apply because events were centered outside Illinois, then plaintiffs must rely on some other state's law; this application of choice-of-law principles has nothing to do with *standing*, though it may affect whether a class should be certified—for a class action arising under the consumer-fraud laws of all 50 states may not be manageable, even though an action under one state's law could be."). Defendant may raise this argument again should the case proceed to a class-certification decision.

repair lotion Product." *Id.* ¶¶ 10, 16. As a result, Defendant contends that Plaintiff lacks Article III standing to pursue claims related to the two products she did not purchase. The Court agrees.

No controlling authority exists on the issue of whether a plaintiff in a putative class action has standing to bring claims based upon products that plaintiff did not purchase, and judges in this district take differing approaches. *See Gibson v. Albertsons Companies, Inc.*, 754 F. Supp. 3d 793, 803 (N.D. Ill. 2024); *see also Gratz v. Bollinger*, 539 U.S. 244, 263 n.15 (2003) (observing tension in caselaw as to whether similar questions are "appropriately addressed under the rubric of standing or adequacy."). Some judges have found that class action plaintiffs never have standing to bring claims related to products they have not purchased. *See, e.g., Bakopoulos v. Mars Petcare US, Inc.*, No. 20-CV-6841, 2021 WL 2915215, at *2–3 (N.D. Ill. July 12, 2021) (collecting cases). Other judges allow plaintiffs to move forward when the products and alleged misrepresentations about the products are substantially similar. *See, e.g., Wagner v. Gen. Nutrition Corp.*, No. 16-CV-10961, 2017 WL 3070772, at *6 (N.D. Ill. July 19, 2017); *see also* McLaughlin on Class Actions § 4.28 (13th ed. 2016) ("[T]he substantial similarity determination is a context-specific analysis, but frequently entails reference to whether the challenged products are of the same kind, whether they are composed of largely the same ingredients, and whether each of the challenged products bears the same alleged mislabeling."). Finally, other judges still treat the debate over unpurchased products as a question of typicality and adequacy of representation to be handled at the class certification phase. *See, e.g., Texas Hill Country Landscaping, Inc. v. Caterpillar, Inc.*, 522 F. Supp. 3d 402, 408–09 (N.D. Ill. 2021).

As a preliminary matter, the Court does not believe that this standing question should be ignored until a request is made for class certification. Standing is jurisdictional: the Court can

either hear the case, or it cannot. Given that no motion for class certification has been made, and a motion may never be made, the Court thinks it best to address the issue of standing now.

With respect to the two approaches taken by other judges, the Court need not choose between them because Plaintiff would lose under either approach. Specifically, the Court concludes that the products, labels, and misrepresentations at issue in this case are not substantially similar for all three lotions. Although all three products are Eucerin-branded and used somewhere on their labels the phrase "Natural Moisturizing Factors Enriched," each label contained different terminology to describe a different product and each product was comprised of a different combination and number of NMFs. For these reasons, the Court agrees that Plaintiff does not have standing to pursue claims relating to products she did not purchase – specifically, the Advanced Repair Cream and Advanced Repair Lotion. Plaintiff may proceed with her claims based only on the product she did purchase, which appears to be Defendant's Intensive Repair Lotion.[3]

### B. Prospective Injunctive Relief

Defendant also argues that Plaintiff does not have standing to pursue injunctive relief because Plaintiff now understands that synthetic NMFs are present in Defendant's products and thus is unlikely to be harmed by Defendant in the future. To "establish injury in fact when seeking prospective injunctive relief, a plaintiff must allege a real and immediate threat of future violations of their rights." *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013)

---

[3] The complaint does not explicitly allege that Plaintiff purchased Defendant's Intensive Repair Lotion, instead stating only that Plaintiff purchased "an intensive repair lotion Product." *Id.* ¶¶ 10, 16. Drawing reasonable inferences in Plaintiff's favor, the Court assumes that the complaint is referring to Eucerin's Intensive Repair Lotion, as the other two products discussed in the complaint do not meet this description. If Plaintiff did not purchase any of the three lotions discussed in the complaint she obviously lacks standing to bring this case at all. Should Plaintiff attempt to file an amended complaint, she should make it clear what product she purchased.

(internal quotations omitted). This threat of injury must be "actual and imminent, not conjectural or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

The Seventh Circuit addressed a plaintiff's standing to pursue injunctive relief in the context of a consumer fraud case in *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732 (7th Cir. 2014). In *Camasta*, the plaintiff purchased shirts from a men's clothing retailer which were advertised on "sale." *Id.* at 735. The plaintiff later learned that it was the retailer's "pattern and practice to advertise normal retail prices as temporary price reductions." *Id.* Although he now knew of the practice, plaintiff asserted that standing existed "solely on the conjecture that because [defendant] harmed him in the past, [it was] likely to harm him in the future." *Id.* at 740. The Seventh Circuit affirmed the dismissal of the claim for injunctive relief, reasoning that "past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." *Id.* Furthermore, the Court found that because plaintiff was "now aware of [defendant's] sales practices, he [was] not likely to be harmed by the practices in the future." *Id.* at 741.

The Court agrees that Plaintiff has not plausibly alleged a real and immediate threat of suffering a future harm from Defendant. Most significantly, Plaintiff has not alleged that she has any interest in purchasing Defendant's products again. Plaintiff has stated "an interest in purchasing products that do not contain false and misleading claims with regards to the identity of the Products." Doc. 15 ¶ 24. But this statement is presumably true for every consumer and is substantively different from an allegation that this plaintiff wants to purchase Defendant's product again and would do so if only she could trust the label. To the extent any district court has concluded that *Camasta* does not bar a claim for injunctive relief in a consumer fraud case, the very least that has been required is an allegation about the plaintiff wanting to purchase from

the defendant in the future. *See, e.g., Curran v. Bayer Healthcare LLC*, No. 17-CV-7930, 2019 WL 398685, at *5 (N.D. Ill. 2019) (finding plaintiff alleged future harm sufficiently by expressing continued desire to purchase product if correct SPF rating was stated on product packaging); *Tarzian v. Kraft Heinz Foods Co.*, No. 18-CV-7148, 2019 WL 5064732, at *4 (N.D. Ill. Oct. 9, 2019) (emphasizing the fact that the complaint stated that the plaintiff "would not have bought the Products had they known the truth about them" as making "it implausible that the Plaintiffs would again purchase the products at issue here."); *Gibson v. Albertsons Companies, Inc*., 754 F. Supp. 3d 793, 804 (N.D. Ill. 2024) (allowing injunctive claim to proceed where plaintiff alleged she would like to purchase defendant's product if she could rely on the claims on its label). Plaintiff has not even met this low bar, and therefore Plaintiff's claim for injunctive relief must be dismissed for lack of standing. *See In re Beyond Meat, Inc., Protein Content Mktg. & Sales Practices Litig.*, 718 F.Supp.3d 800, 810 (N.D. Ill. 2024) (finding that a plaintiff "cannot pursue injunctive relief absent a concrete basis to conclude that, in the future, they will purchase the Products again and be deceived").

## II.     ICFA

The Court next considers whether Plaintiff has plausibly alleged a claim under the ICFA. The ICFA "is a regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002). "The elements of an ICFA claim are: (1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive practice occurred during a course of conduct involving trade or commerce." *Rao v. J.P. Morgan Chase Bank, N.A.*, 153 F.4th 541, 555–56 (7th Cir. 2025) (internal citation

omitted). The ICFA allows for recovery for either deceptive or unfair conduct, *see Robinson*, 775 N.E.2d at 960, and Plaintiff here only pleads a deceptive practice.[4] Because Plaintiff's claim sounds in fraud, she must meet Rule 9(b)'s heightened pleading standard. *See Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019). And because Plaintiff is a private party, she must show she suffered actual damages as a result of Defendant's alleged ICFA violation. *See Camasta*, 761 F.3d at 739.

The Court begins with whether the challenged packaging was deceptive. A "statement is deceptive if it creates a likelihood of deception or has the capacity to deceive." *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001). The standard used is that of a reasonable consumer, which "requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 474–75 (7th Cir. 2020). Courts considering "deceptive advertising claims should take into account all the information available to consumers and the context in which that information is provided and used." *Id.* at 477. "What matters most is how real consumers understand and react to the advertising." *Id.* at 476. A literally true statement may still support a claim of deception where the true statement creates a false impression. *See id.* at 479 (stating that the "law has long recognized that even literally true claims may deceive, that

---

[4] Under the ICFA "deceptive conduct is distinct from unfair conduct" and a claim "may be premised on either (or both), but the two categories have different pleading standards." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 738 (7th Cir. 2019). Unlike allegations of deceptive acts, which sound in fraud and are subject to a heightened pleading standard, allegations of unfair acts under the ICFA are subject to Rule 8(a)'s general pleading standard. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 446 (7th Cir. 2011). Because Plaintiff does not allege any unfairness apart from the alleged deception, this Court does not read Plaintiff's amended complaint as bringing an "unfairness" claim under the ICFA. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014); *Goldberg v. 401 N. Wabash Venture LLC*, 755 F.3d 456, 464 (7th Cir.2014).

implied messages in advertising may deceive, and that what matters is how consumers actually understand the advertising.").

Whether a statement is deceptive is usually an issue of fact. *See Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020). However, a court may dismiss an ICFA claim if the challenged statement was not misleading as a matter of law. *See Bober*, 246 F.3d at 940. When a claim is based "on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may be justified." *Bell*, 982 F.3d at 477.

Here, the complaint essentially concedes that Defendant's product label is literally true. According to the complaint, "Natural Moisturizing Factor" is a term of art used by the medical community to refer to "a group of chemicals found in the outer layers of human skin." Doc. 15 ¶ 9. The complaint further acknowledges that certain NMFs (lactic acid, sodium lactate, and urea) were used in Defendant's Intensive Repair Lotion. *Id.* ¶¶ 9, 11, 17-23. So, based upon the complaint as currently pled, it would not be a false statement that Defendant's product was "NMF enriched."[5] Still, Plaintiff argues that there are natural NMFs and synthetic NMFs, and reasonable consumers who see the word "natural" within the phrase "Natural Moisturizing Factor" would be misled into believing that the NMFs in the product are not synthetically derived. Specifically, Plaintiff argues that a reasonable consumer would believe Defendant's lotion would be "as found in nature and not involving anything made or done by people." *Id.* ¶ 13.

---

[5] The Court notes that an article cited in the complaint has a very different definition of NMF. According to that article, NMF is not a group of chemicals but the skin's "ability to regulate how much it moisturizes itself." Doc. 15 ¶ 9 n.1, citing Leslie Baumann, M.D., What Is Natural Moisturizing Factor (NMF), Leslie Baumann M.D., https://www.lesliebaumannmd.com/what-is-natural-moisturizing-factor-nmf. In other words, NMF is a quality your skin cells possess, and "using topical products" is not effective to change it. *Id.* Under this definition, "Natural Moisturizing Factor Enriched" would not be literally true, as there is no way that a lotion could contain something inherent in one's skin. For the purposes of this opinion, the Court uses the definition of NMF that is pled explicitly in the complaint.

11

Plaintiff's current theory of deception is unreasonable for at least two reasons. First, Plaintiff construes the word "natural" in isolation and without regard for the way the term was actually presented to consumers. Plaintiff alleges that a reasonable consumer would have believed that the lotion "contained entirely natural moisturizing factors." *Id.* ¶ 28. However, the front packaging does not say that the product is "exclusively natural," or "all natural," or anything of the sort. Instead, the label says "Alpha Hydroxy & Natural Moisturizing Factors Enriched." *Id.* ¶ 27. A reasonable consumer would have read the entire phrase, not just the word "natural." And a reasonable consumer would not read "enriched" to mean "entirely." *See Hamidani v. Bimbo Bakehouse LLC*, No. 22-CV-01026, 2023 WL 167513, at *3 (N.D. Ill. Jan. 12, 2023) ("Packaging that merely depicts or asserts the presence of an ingredient typically cannot lead a reasonable consumer to conclude that the product contains a certain amount of that ingredient."). To the extent Plaintiff's theory of the case is that the label implied an all-natural product, the Court finds this implausible.

The second problem with the complaint as currently pled is Plaintiff's definition of "natural" as "found in nature and not involving anything made or done by people." Doc. 15 ¶ 13. No reasonable consumer would look at Defendant's mass-produced plastic bottles on a Target display shelf and conclude that they included substances untouched by the human hand. Inherent in creating a lotion is some form of manufacturing and processing done by people. *Cf. Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 758 (N.D. Ill. 2015) (finding implausible a claim that a label with the phrase "no refined sugars" was deceptive because sugar must be refined to be edible). For this reason too, the Court does not believe that Plaintiff's theory of deception is plausible as the complaint is currently pled.

12

Plaintiff's complaint also fails to plausibly allege actual damages. Even if Plaintiff amends the complaint to correct the above-noted deficiencies, it is not enough under the ICFA that the defendant's conduct deceived the plaintiff into purchasing a product, the plaintiff must also plausibly allege that she suffered "actual pecuniary loss" due to that deception. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014). Examples of actual pecuniary loss include allegations that the plaintiff bought defective merchandise, paid more than the merchandise was worth, or that a better price was available elsewhere in the market. *Kim v. Carter's, Inc.*, 598 F.3d 362, 365 (7th Cir. 2010). Here, Plaintiff has not alleged that Defendant's lotion with synthetic NMFs performed any differently than lotion with natural NMFs. Indeed, it appears from the many scientific sources cited in the complaint that synthetic and natural NMFs are chemically the same, so the Court cannot draw an inference that the resulting products were any different. Nor has Plaintiff alleged that natural NMF products sell at a higher price point than synthetic NMF products. Indeed, Plaintiff has not alleged that natural NMF products exist in the market at all.[6] The closest Plaintiff comes is through the allegation that "Defendant has been able to sell the Products at a greater price and/or in greater quantity than if Defendant did not include the challenged labeling." Doc. 15 ¶ 35. But allegations that Defendant may have sold more of its product due to its deception do not prove that Plaintiff suffered pecuniary loss. And Plaintiff's statement that the product was sold "at a greater price" is far too speculative and conclusory to plausibly support a finding of actual damages. *See Camasta*, 761 F.3d at 740 (finding plaintiff's allegations as to the true value of the product "mere guesses void of any substantial analysis" and therefore insufficient to support a claim).

---

[6] One of the most popular ingredients in modern skincare products is urea, which is derived from urine. It seems unlikely that any skincare company is using urea in its natural, rather than synthetic, form.

Both Plaintiff and her counsel should know better, having recently gone down this same road before Judge Seeger. *See Slowinksi v. BlueTriton Brands, Inc*., 744 F.Supp.3d 867 (N.D. Ill. 2024). In *BlueTriton*, this same plaintiff and counsel took issue with Ice Mountain's "100% Natural Spring Water" labeling and claimed that Plaintiff had been harmed because she "paid a premium" for the water and did not "get the benefit of the bargain" she expected. *Id*. at 887. Judge Seeger pointed out that this was not a plausible theory of actual damages because Plaintiff did not show that she had suffered "any observable economic consequences" from purchasing the water. *Id.* For the same reason Plaintiff's damages claims were inadequate in *BlueTriton*, they fail here.

### III.    Common Law Faud

The Court moves next to Plaintiff's claim of common law fraud. In Illinois, the elements of common law fraud are "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 591 (Ill. 1996). Just as with the ICFA, "[d]amages for fraud must be pecuniary in nature, for the tort of common-law fraud is primarily addressed to the invasion of economic interests." *Kim v. State Farm Mutual Automobile Insurance Co*., 199 N.E.3d 737, 750 (Ill. App. Ct. 2021) (internal quotations omitted). As discussed above, Plaintiff has failed to plausibly allege any false or deceptive statement likely to mislead a reasonable consumer as well as actual damages. Plaintiff's common law fraud claim is therefore dismissed.

### IV.    Unjust Enrichment

14

Finally, the Court considers Plaintiff's unjust enrichment claim. Under Illinois law, unjust enrichment is not a standalone cause of action. *See Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 739 (7th Cir. 2019); *Martis v. Grinnell Mut. Reins. Co.,* 905 N.E.2d 920, 928 (Ill. App. Ct. 2009) ("Unjust enrichment is not a separate cause of action that, standing alone, will justify an action for recovery."). Given the dismissal of all of the other claims in the complaint, the unjust enrichment claim must also be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted. Plaintiff is given leave to file an amended complaint if she can do so consistent with the guidance laid out in this opinion. Any amended complaint must be filed by March 9, 2026.

Dated: February 6, 2026

_____
APRIL M. PERRY
United States District Judge