**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| CHRISTINE SLOWINSKI, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 1:25-cv-06523 |
| v. | **SECOND AMENDED CLASS ACTION COMPLAINT** |
| BEIERSDORF, INC., | **JURY DEMANDED** |
| Defendant. | |

Now comes the Plaintiff, Christine Slowinski ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, and for her Second Amended Class Action Complaint against the Defendant, BEIERSDORF, INC., ("Defendant"), Plaintiff alleges and states as follows:

**PRELIMINARY STATEMENT**

1.      This is an action for damages and any other available legal or equitable remedies, for violations of Illinois Consumer Fraud and Deceptive Businesses Practices Act ("ILCFA"), 815 ILCS 505/1 *et seq*., common law fraud, and unjust enrichment, resulting from the illegal actions of Defendant, in intentionally labeling its lotions as "Natural Moisturizing Factors Enriched" when all of the Defendant's Products' "Natural Moisturizing Factors" are synthetic. Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

2. Approximately one hundred thirty million U.S. adults, or 54% of those aged 16-74, read below a sixth grade level.[1] More specifically, around ninety million Americans have difficulty understanding health information.[2] Academic research similarly notes that ingredient labels on products such as cosmetics, food, and detergents can be difficult for consumers to read and understand, particularly when they rely on scientific naming conventions.[3]

3. Studies show a negative relationship between reading speed and comprehension such that most readers cannot substantially increase their reading speed without sacrificing comprehension.[4] Behavior research shows that shoppers make purchase decisions within seconds while viewing packaging, meaning most consumers glance at product labels rather than carefully reading them.[5]

**PARTIES**

4. Plaintiff is an individual who was at all relevant times residing in Schaumberg, Illinois.

5. Defendant is a Delaware corporation, whose principal place of business is located in Hamburg, Germany.

6. At all times relevant hereto, Defendant was engaged in the marketing and sale of lotion.

---

[1] National University, *49 Adult Literacy Statistics and Facts You Should Know*, Nat'l Univ. (Aug. 30, 2022), https://www.nu.edu/blog/49-adult-literacy-statistics-and-facts/.
[2] Inst. of Med., *Health Literacy: A Prescription to End Confusion* 1 (Nat'l Acads. Press 2004).
[3] *See* Kerem Yazar et al., *Readability of Product Ingredient Labels Can Be Improved by Simple Means*, Contact Dermatitis (2014).
[4] Keith Rayner et al., *So Much to Read, So Little Time: How Do We Read, and Can Speed Reading Help?*, 17 Psych. Sci. Pub. Int. 4, 4–34 (2016).
[5] *See* Pierre Chandon et al., *Does In-Store Marketing Work? Effects of the Number and Position of Shelf Facings on Brand Attention and Evaluation at the Point of Purchase*, 44 J. Marketing 1, 4–6 (2009).

## JURISDICTION AND VENUE

7.    Defendant removed this case to the District Court of the Northern District of Illinois alleging that this Court has jurisdiction pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds the sum or value of $5,000,000.00 in which members of the class are citizens of a State different from the Defendant.

8.    This court has personal jurisdiction over Defendant, because Defendant does business within the State of Illinois and County of Cook

9.    Venue is proper in this Court because Defendant does business *inter alia* in the county of Cook and a significant portion of the conduct giving rise to Plaintiff's Claims happened here.

## FACTS COMMON TO ALL COUNTS

10.    Defendant advertises, markets, sells, and distributes lotion throughout Illinois and the United States.

11.    The term "natural moisturizing factor" refers to a group of chemicals found in the outer layers of human skin that have an important role moisturizing skin.[6] Furthermore, the term originates in medical journals and is used in medical publications.[7]

---

[6] See Leslie Baumann, M.D., *What Is Natural Moisturizing Factor (NMF)*, Leslie Baumann M.D. (accessed Aug. 5, 2025), https://www.lesliebaumannmd.com/what-is-natural-moisturizing-factor-nmf.; Eucerin, *Natural Moisturizing Factors (NMFs)*, Eucerin International (accessed Aug. 5, 2025), https://int.eucerin.com/our-research/ingredients/nmfs.

[7] Understanding the Role of Natural Moisturizing Factor in Skin Hydration, *Practical Dermatology* (July 17, 2012), https://practicaldermatology.com/topics/general-topics/understanding-the-role-of-natural-moisturizing-factor-in-skin-hydration/21612/; Jacobi OK. About the mechanism of moisture regulation in the horny layer of the skin. Proc Sci Sect Toilet Goods Assoc. 1959; 31:22-4; Laden K, Spitzer R. Identification of a natural moisturizing agent in skin. J Soc Cosmet Chem. 1967; 18:351-60

3

12.     The term "Natural Moisturizing Factors" is not a common parlance term and the term's definition is not facially self-evident. The meaning of the term "Natural Moisturizing Factors" cannot be parsed without outside research, and without medical or technical literacy.

13.     During the Class Period Defendant Eucerin Intensive Repair Lotion (the "Products") labeled, marketed, and advertised as "Natural Moisturizing Factors Enriched", when all of the "Natural Moisturizing Factors" in the Products are synthetic.

14.     Relevant "Natural Moisturizing Factors" included in the Products are lactic acid[8], sodium lactate[9], glycerin[10], and urea.[11]

15.     At the time Plaintiff purchased her Product she read Defendant's front package labeling claiming the Product contained "Natural Moisturizing Factors", which led her to believe that the "Natural Moisturizing Factors" in the Products would be natural.

16.     Consumer studies show that consumers associate "natural" labeling with fewer artificial ingredients, clean labeling, and minimal processing.[12] Plaintiff, and reasonable consumers, therefore believe that products with "natural" labeling include no, or less, artificial ingredients than products without "natural" labeling.

---

[8] Eucerin, *Lactic Acid*, Eucerin International (accessed Aug. 5, 2025), https://int.eucerin.com/our-research/ingredients/lactic-acid.

[9] Lohmann Minerals, *Sodium Lactate Solution for Skin Care Products*, Lohmann Minerals (accessed Aug. 5, 2025), https://www.lohmann-minerals.com/en-us/news-center/news/sodium-lactate-solution-for-skin-care-products/.

[10] Kang et al., *Fitzpatrick's Dermatology*, McGraw Hill Med., https://dermatology.mhmedical.com/content.aspx?sectionid=244978601&bookid=2812 (last visited Mar. 9, 2026).

[11] Anar Mikayelyan et al., *The Effect of a Cream Containing Urea, Arginine, and Carnitine in the Treatment of Xerosis in Elderly Subjects: Externally Controlled, Single-Blind, Non-Randomized Clinical Trial*, 19 Skin Health & Disease e60 (2021), https://pubmed.ncbi.nlm.nih.gov/34596890/.

[12] Coherent Market Insights, *Natural and Organic Cosmetics Market Size, Share & Trends Analysis* (Apr. 10, 2025), https://www.coherentmi.com/industry-reports/natural-and-organic-cosmetics-market (last visited Mar. 8, 2026)

17. Reasonable consumers interpreting Defendant's "Natural Moisturizing Factors Enriched" label at face value likely expect that at that at least some of the Products' "Natural Moisturizing Factors" would be natural, like Plaintiff in this case.

18. Yet, **all** the "Natural Moisturizing Factors" in Defendant's Products as described below are synthetic.

19. On July 7, 2024, Plaintiff purchased one of Defendant's intensive repair lotion Products from a Target in Schaumburg, Illinois.

20. Defendant uses manufactured artificial lactic acid, sodium lactate, urea, and glycerin in the Products.

21. Manufactured lactic acid is synthetic and is produced through genetically engineered bacterial fermentation and acid base synthesis. Genetically engineered bacteria are fed a carbohydrate feedstock like glucose or sucrose and excrete lactic acid as a part of their biological metabolic process.[13] Lactic acid is then collected and refined by removing dead bacteria cells through Rotary Drum Vacuum Filter.[14] Lactic acid is then purified and extracted by adding a calcium salt like calcium carbonate $CaCo_3$ (lime, chalk) to cause a spontaneous synthetic acid-base reaction between the calcium carbonate and the lactic acid.[15] The result of that synthetic reaction is the salt calcium lactate. To purify and successfully convert the calcium lactate to lactic acid an additional industrial chemical, sulfuric acid is added to produce lactic acid and calcium

---

[13] Brin, *Biochem. Prepn.*, 3, 61 (1953).

[14] G.K. Chotani et al., in *Handbook of Indus. Chem. & Biotech.*, 1495 (J.A. Kent et al. eds., Springer 2017).

[15] G.K. Chotani et al., in *Handbook of Indus. Chem. & Biotech.*, 1495 (J.A. Kent et al. eds., Springer 2017); A.O. Ojo & O. de Smidt, *Processes*, 11, 688 (2023).

sulfate (gypsum) the gypsum is then collected, and the lactic acid can then be further purified with organic solvents.[16].

22.    Manufactured sodium lactate is synthetic and is produced through a neutralization reaction between lactic acid and sodium hydroxide.[17]

23.    Manufactured urea is synthetic and is produced by reacting ammonia and carbon dioxide to form ammonium carbamate that is then decomposed to form urea and water.[18]

24.    Manufactured glycerin, also known as glycerol, is synthetic and is produced as a byproduct of the saponification and hydrolysis of oils and fats and biodiesel transesterification.[19]

25.    Based on the forgoing allegations all of the "Natural Moisturizing Factors" in the Products are artificial.

26.    Persons, like Plaintiff herein, have an interest in purchasing products that do not contain false and misleading claims with regards to the identity of the Products.

27.    By making false and misleading claims about the identity of its Products, Defendant impaired Plaintiff's ability to choose the type and quality of products she chose to buy.

28.    Therefore, Plaintiff has been deprived of her legally protected interest to obtain true and accurate information about her consumer products as required by law.

///

///

---

[16] *Id.*

[17]    SpecialChem, *Sodium Lactate*, SpecialChem (accessed Aug. 5, 2025), https://www.specialchem.com/cosmetics/inci-ingredients/sodium-lactate.

[18] Chemical Engineering World, *Urea Manufacturing Process*, Chemical Engineering World (accessed Aug. 5, 2025), https://chemicalengineeringworld.com/urea-manufacturing-process/.

[19] H.W. Tan, A.R. Abdul Aziz & M.K. Aroua, *Glycerol Production and Its Applications as a Raw Material: A Review*, 27 Renewable & Sustainable Energy Revs. 118 (2013).

29.     The following are examples of Defendant's fraudulent labeling:





30.     As a result of Defendant's fraudulent labeling, Plaintiff and the Class have been misled into purchasing Products that did not provide them with the benefit of the bargain they paid money for, namely that the Products were "Natural Moisturizing Factors Enriched" and contained "Natural Moisturizing Factors".

7

31.     Plaintiff and the Class purchased Defendant's Products because Defendant's advertising claimed that the Products were "Natural Moisturizing Factor Enriched".

32.     Due to Defendant's intentional, deceitful practice of falsely labeling the Products as "Natural Moisturizing Factor Enriched" when they are not, Plaintiff could not have known that the Products' "Natural Moisturizing Factors" were synthetic.

33.     Plaintiff was unaware that the Product's natural moisturizing factors were synthetic when she purchased it.

34.     Plaintiff and the Class were deceived into paying money for Products that did not provide them with the benefit of the bargain they paid Defendant money for, namely that the Products' natural moisturizing factors would be natural, when they are synthetic.

35.     Producers of consumer products, like Defendant, use consumer product labeling to increase consumer demand for products based on the perceived features or benefits of the products thereby increasing the price producers can charge for their products and/or the quantity they can sell.

36.     Defendant by including "natural moisturizing factors enriched" labeling increased consumer demand for the Products by incentivizing consumers to purchase them to receive desirable product features.

37.     However, as described above, the "natural moisturizing factors" in Defendant's Products are synthetic instead of natural, and consumers have been therefore deprived of that product feature. As a result, Defendant has been able to sell the Products at a greater price and/or in greater quantity than if Defendant did not include the challenged labeling, but without providing consumers with the promised product feature. Stated otherwise, Defendant coerced consumers to base their purchasing decision in material part on false claims, thereby fraudulently, deceptively,

and unfairly increasing consumer demand for the product. Defendant profited from these acts by extracting additional funds from consumers than otherwise would not have been paid for Class Products, and also harmed competitors by luring would-be consumers of competitive products away from law-abiding products that were not so falsely advertised

38. Plaintiff purchased a 16.9-ounce Product from Target for $12.99, or approximately $0.77 per ounce. Meanwhile, other lotion products without Defendant's "Natural Moisturizing Factors" labeling are sold by Target for $4.49 for 20-ounces, or $0.22 per ounce.[20] Additionally, the comparable UP&UP brand moisturizer contains both glycerin and sodium lactate as well as several of the Products' non-"Natural Moisturizing Factor" ingredients such as caprylic/capric triglyceride.

39. Even if Defendant's conduct as described herein is not technically deceptive, it would be fundamentally unfair, oppressive, unscrupulous and would cause substantial injury to consumers, because a substantial portion of consumers are likely to be confused and mislead by Defendant's "Natural Moisturizing Factors Enriched" labeling to make purchases they otherwise would not have made in lieu of other similar products for lesser prices.

40. Defendant, and not Plaintiff, the Class, or Sub-Class, knew or should have known that labeling, marketing, and selling the Products as "Natural Moisturizing Factors Enriched" was false, deceptive, and misleading, and that Plaintiff, the Class, and Sub-Class members would not be able to tell the Products' natural moisturizing factors were actually synthetic unless Defendant expressly told them.

---

[20] Up & Up, *Deep Moisturizing Body Lotion, Ocean Water, 20 oz*, Target, https://www.target.com/p/deep-moisturizing-body-lotion-ocean-water-20oz-up-38-up-8482/-/A-90386072 (last visited Mar. 9, 2026).

9

41.     Defendant employs professionals to formulate its products. As a result, Defendant knew or should have known that the natural moisturizing factors in the Products were synthetic but did not inform consumers to take advantage of the likely confusion that would follow.

42.     As a result of Defendant's acts and omissions outlined above, Plaintiff has suffered concrete and particularized injuries and harm, which include, but are not limited to, the following:

      a.     Lost money as a result in a shift of the consumer demand curve which increases consumer demand, the number of units sold, and the price of the Products;

      b.     Wasting Plaintiff's time; and

      c.     Stress, aggravation, frustration, loss of trust, loss of serenity, and loss of confidence in product labeling.

## CLASS ALLEGATIONS

43.     Plaintiff brings this action on behalf of herself and all others similarly situated, as a member of the proposed class (the "Class"), defined as follows:

> All persons within the United States who purchased the Products within five years prior to the filing of the original Complaint through the date of class certification.

44.     Plaintiff also brings this action on behalf of himself and all others similarly situated, as a member of the proposed sub-class (the "Sub-Class"), defined as follows

> All persons within the State of Illinois who purchased the Products within five years prior to the filing of the original Complaint through the date of class certification.

45.     The Class and the Sub-Class satisfy all of the requirements of the Illinois Code of Civil Procedure for maintaining a class action, specifically:

10

a. Upon information and belief, the Class and the Sub-Class are so numerous that joinder of all members is impracticable. On information and belief there are hundreds, if not thousands of individuals in the United States and the State of Illinois who purchased the products within the applicable statute of limitations period.

b. There are questions of fact and/or law which are common to the Class and the Sub-Class, and which predominate over questions affecting any individual Class or Sub-Class members. These common questions of fact and law include, but are not limited to:

    i. Whether Defendant disseminated false and misleading information by claiming the Products were "Natural Moisturizing Factors Enriched" when the natural moisturizing factors in the Products are synthetic;

    ii. Whether the Class and Sub-Class members were informed that the Products contain synthetically produced moisturizing factors;

    iii. Whether the Products contain synthetically produced moisturizing factors;

    iv. Whether Defendant's conduct was unfair and deceptive;

    v. Whether Defendant unjustly enriched itself as a result of the unlawful conduct alleged above;

    vii. Whether there should be a tolling of the statute of limitations; and

    viii. Whether the Class and Sub-Class members are entitled to restitution, actual damages, punitive damages, and attorneys' fees and costs.

11

c. Plaintiff's claims are typical of the Class and the Sub-Class, which all arise from the same operative set of facts and are based on the same legal theories

d. Plaintiff has no interests adverse or antagonistic to the interests of the other members of the Class and the Sub-Class.

e. Plaintiff will fairly and adequately protect the interests of the Class and the Sub-Class and Plaintiff has retained experienced and competent attorneys to represent the Class and the Sub-Class.

f. This class action is a fair and efficient adjudication of the controversy alleged herein. Plaintiff anticipates that no unusual difficulties are likely to be encountered in the management of this class action.

g. This class action will permit large numbers of similarly situated persons to prosecute their common claims in a single forum simultaneously and without the duplication of effort and expense that numerous individual actions would engender. This class action will also permit the adjudication of relatively small claims by many Class and Sub-Class members who would not otherwise be able to afford to seek legal redress for the wrongs complained of herein. Absent a class action, Class and Sub-Class members will continue to suffer losses of legally protected rights, as well as monetary damages. If Defendants' conduct is allowed proceed to without remedy, Defendants will continue to benefit financially from such conduct.

h. Defendants have acted on grounds generally applicable to the entire Class and Sub-Class, thereby making it appropriate for the Court to order final

12

monetary, injunctive, and declaratory relief with respect to the Class and the Sub-Class as a whole.

46. Defendant, its employees and agents are excluded from the Class and Sub-Class. Plaintiff does not know the number of members in the Class and Sub-Class, but believes the members number in the thousands, if not more. Thus, this matter should be certified as a Class Action to assist in the expeditious litigation of the matter.

47. The size and definition of the Class and Sub-Class can be identified by Defendant's own records.

**COUNT I**
**VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND**
**DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505/1,** *et seq.*

48. Plaintiff incorporates all of the allegations and statements made in Paragraphs 1 through 47 above as if fully reiterated herein.

49. Plaintiff is a "person" as defined in 815 ILCS 505/1(c), as she is a natural person.

50. Defendant is a "person" as defined in 815 ILCS 505/1(c), as it is a company and a business entity and/or association.

51. 815 ILCS 505/2 states:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

52. Through its representation that the Products were "Natural Moisturizing Factors Enriched", Defendant made false promises, misrepresentations, concealments, suppressions, and

13

omissions of material facts, with the intent that Plaintiff rely upon said false promises, misrepresentations, concealments, suppressions, and omissions of material facts.

53.     815 ILCS 505/10a states:

(a) Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper...

(c) [T]he Court may grant injunctive relief where appropriate and may award, in addition to the relief provided in this Section, reasonable attorney's fees and costs to the prevailing party.

54.     In taking the unfair, oppressive, and unscrupulous actions and omissions set forth above, and making the false promises, misrepresentations, concealments, suppressions, and omissions of material facts set forth above, Defendant violated the Illinois Consumer Fraud and Deceptive Business Practices Act, including, but not limited to, 815 ILCS 505/2.

55.     Defendant failed to comply with the requirements of the ILCFA, including, but not limited to, 815 ILCS 505/2 as to the Class and Sub-Class members with respect to the above-alleged transactions

56.     By reason thereof, Plaintiff is entitled to a judgment against Defendant awarding actual damages, punitive damages, costs, and attorneys' fees.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for a judgment against Defendant as follows:

a.      An order certifying the Class and the Sub-Class and appointing Plaintiff as Representative of the Class and the Sub-Class;

b.      An order certifying the undersigned counsel as the Class and Sub-Class Counsel;

14

c.　　An order requiring Defendant, at its own cost, to notify all members of the Class and the Sub-Class of the unlawful, unfair, deceptive, and unconscionable conduct herein;

d.　　Judgment against Defendant in an amount to be determined at trial;

e.　　Judgment against Defendant for Plaintiff's attorneys' fees, court costs, and other litigation costs; and

f.　　Any other relief deemed just and proper by this Court.

## COUNT II
## COMMON LAW FRAUD

57.　　Plaintiff incorporates all of the allegations and statements made in Paragraphs 1 through 47 above as if fully reiterated herein.

58.　　Through its false statements that the Products were "Natural Moisturizing Factors Enriched", Defendant made false statements of material fact.

59.　　At the time Defendant made its statements to Plaintiff that the Products were "Natural Moisturizing Factors Enriched", it knew, or reasonably should have known, that the statements described above were false.

60.　　At the time Defendant made the statements to Plaintiff, Defendant intended to induce Plaintiff to purchase the Products.

61.　　Plaintiff relied upon the truth of the statements described above and purchased the Products, only to find out that the Products' natural moisturizing factors were actually synthetic.

62.　　As a result of their reasonable reliance upon Defendant's false statements of material fact as set forth above, Plaintiff and other members of the Class and Sub-Class have suffered concrete and particularized injuries, harm, and damages which include, but are not limited to, the loss of money spent on products they did not want to buy, and stress, aggravation,

15

frustration, inconvenience, emotional distress, mental anguish, and similar categories of damages.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for a judgment against Defendant as follows:

    a.    An order certifying the Class and the Sub-Class and appointing Plaintiff as Representative of the Class and the Sub-Class;

    b.    An order certifying the undersigned counsel as the Class and Sub-Class Counsel;

    c.    An order requiring Defendant, at its own cost, to notify all members of the Class and the Sub-Class of the unlawful, unfair, deceptive, and unconscionable conduct herein;

    d.    Judgment against Defendant in an amount to be determined at trial;

    e.    Judgment against Defendant for Plaintiff's attorneys' fees, court costs, and other litigation costs; and

    Any other relief deemed just and proper by this Court.

## COUNT III
## UNJUST ENRICHMENT

63.    Plaintiff incorporates all of the allegations and statements made in Paragraphs 1 through 47 above as if fully reiterated herein.

64.    Plaintiff conferred monetary benefits to Defendant by purchasing the Products.

65.    Defendant has been unjustly enriched by retaining the revenues derived from Plaintiff's purchase of the Products based on the misleading statements that the Products were "Natural Moisturizing Factors Enriched".

66.    Defendant's retention of the revenue it received from Plaintiff, and the Class and

Sub-Class members, is unjust and inequitable because Defendant's false statements caused injuries to Plaintiff, and the Class and Sub-Class members.

67.     Defendant's unjust retention of the benefits conferred on it by Plaintiff, and the Class and Sub-Class members, entitles Plaintiff, and the Class and Sub-Class members, to restitution of the money they paid to Defendant for the Products.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for a judgment against Defendant as follows:

a.      An order certifying the Class and the Sub-Class and appointing Plaintiff as Representative of the Class and the Sub-Class;

b.      An order certifying the undersigned counsel as the Class and Sub-Class Counsel;

c.      An order requiring Defendant, at its own cost, to notify all members of the Class and the Sub-Class of the unlawful, unfair, deceptive, and unconscionable conduct herein;

d.      Judgment against Defendant in an amount to be determined at trial;

e.      Judgment against Defendant for Plaintiff's attorneys' fees, court costs, and other litigation costs; and

f.      Any other relief deemed just and proper by this Court.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues in this action so triable, except for any issues relating to the amount of attorneys' fees and costs to be awarded should Plaintiff prevail on any of

her claims in this action.

RESPECFULLY SUBMITTED,

CHRISTINE SLOWINSKI

/s/ Steven G. Perry
Steve G. Perry
Attorney for Plaintiff
Illinois Attorney No. 6330283
Law Offices of Todd M. Friedman, P.C.
555 Skokie Blvd., Suite 500
Northbrook, IL 60062
Phone: (224) 218-0875
Steven.perry@toddflaw.com

/s/ Todd M. Friedman
Todd M. Friedman
Attorney for Plaintiff
Illinois Attorney No. 6276496
Law Offices of Todd M. Friedman, P.C.
23586 Calabasas Rd., Suite 105
Calabasas, CA 91302
Phone: (323) 306-4234
tfriedman@toddflaw.com

## CERTIFICATE OF SERVICE

I hereby certify that, on March 9, 2026, a copy of the foregoing Second Amended Class Action Complaint was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

/s/ Steven G. Perry
Attorney for Plaintiff